### D. L. PAYNE v. THE STATE.

No. 8354. Delivered May 20, 1925.

1.—Manslaughter—Indictment—Numbering of—Practice in Trial Courts.

Where two indictments were returned against appellant, at the same time, and were numbered by the clerk, who afterward changed the numbers, this would not entitle appellant to be tried on the indictment, as originally numbered by the clerk, the case being called for trial in the order of the numbering on the indictment as changed by the clerk.

2.—Same—Evidence—Cross-Examination—Latitude of.

Where the defense on direct examination of a witness opens up an inquiry, it is proper for the state to cross-examine such witness on the same subject, and to pursue such examination to any extent that is germane, to the direct examination.

3.—Same—Evidence—Not Harmful.

Where a witness, in trying to describe the effect upon deceased of the fatal shot said "well he just crumpled down just like a dead animal would that was shot through the head" would not seem to us any such answer that would have a harmful effect, in view of the fact that deceased was so shot, and did fall dead immediately. There was no issue made of these facts.

4.—Same—Evidence—Declarations of Appellant—Held, Res Gestae.

A statement of appellant, made to the sheriff a few minutes after the double killing by him, as he handed the sheriff his two pistols with which the killing was done with the statement "Put two marks on this big gun," was properly admitted, being res gestae.

5.—Same—Evidence—Collateral Issues—Not Material—Properly Excluded.

Appellant was on trial for the killing of one Swazea. Maud Rippey was also killed by appellant at the same time. That a court of inquiry was held upon a complaint of a son of appellant, to officers that Maud Rippey was selling his father whisky and what was said and done at the sitting of said court, was not material to any issue in this case and was properly excluded.

6.—Same—Evidence—Exclusion of—Harmless—No Error.

Where evidence whose only tendency is to show a disturbed condition of appellant's mind, to reduce the homicide to the grade of manslaughter is rejected, and the conviction is for manslaughter, no error of a harmful character is presented.

7.—Same—Evidence—Collateral—Issues—Improperly Admitted.

Where appellant was permitted to testify as to difficulties between himself and Dick Rippey, who was not a party to the instant shooting, it was error necessitating a reversal, to permit the state to prove by many witnesses incidents in which appellant had assaulted and abused other persons, indicating that he was generally a bad and dangerous man.

Appeal from the District Court of Randall County. Tried below before the Hon. Henry S. Bishop, Judge.

Appeal from a conviction of manslaughter; penalty, five years in the penitentiary.

The opinion states the case.

*T. B. Ridgell, L. A. Wicks,* and *W. J. Flesher,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—From conviction in the district court of Randall County of manslaughter, with punishment fixed at five years, this appeal is brought.

The conviction was for killing one Sweazea, an old man with whom appellant seems to have had no other grudge or quarrel save that Sweazea was in a car on a former occasion with Dick and Maud Rippey when one or both of the Rippeys shot appellant. If we comprehend the defensive theory in this case it was that appellant

had had much trouble with the Rippeys and that what might be termed a fued existed between him and them, and that deceased was with Maud Rippey on the occasion of this homicide and that after killing Maud Rippey, appellant shot this deceased, claiming that he thought he saw a pistol in his hand. Growing out of the former trouble in which appellant was shot by one or both of the Rippeys, an indictment was returned against them and also against this deceased charging them with assault to murder appellant. The case against said parties was coming up for trial and appellant was in town as a witness in said case. Maud Rippey and deceased with their attorney Mr. A. B. Martin were on the steps of the court house at the southeast corner entrance. Appellant seems to have gone around to that entrance and there shot and killed both Maud Rippey and deceased. Mr. Martin who testified for the State said that he was sitting very close to Rippey engaged in private conversation with him about the case coming up and that deceased was standing near listening to said conversation; that something attracted his attention and he looked up and appellant was standing there with his pistol presented, and that he fired almost instantly killing Rippey, and then turned and shot deceased who fell dead. Neither Rippey nor deceased had arms of any kind. Rippey made an effort to escape but was pursued by appellant who shot him several times. He then went back to where the body of deceased was lying and shot him again.

Appellant was indicted separately for the two homicides. The indictments were received by the clerk and that for the killing of Rippey was numbered 623 and the one for killing this deceased, numbered 624. Before either case was docketed the clerk exchanged the numbers. Appellant complains of this fact. One indicted in two cases at the same time, the original file numbers of which are exchanged by the clerk before docketing either case, would not seem to be injured upon no greater showing than of the fact of the change, and in view of the fact that the courts are not compelled to first call for trial the earliest numbered of several cases against a defendant on the docket, we perceive no error in overruling appellant's motion to require the court to take up cause 624 before the trial of the instant case. No authorities are cited by appellant.

The refusal of a continuance will not be reviewed in the absence of a bill of exceptions. Hollis v. State, 9 Texas Crim. App. 643.

The question by the State to the daughter of deceased as to whether her father was expecting trouble, was subject to the objection made by appellant but for the fact, stated without objection in the court's qualification to bill of exceptions No. 3, that before said question was asked, appellant had put to said witness the question, "You knew that the Rippeys and your father were expecting trouble with Payne, didn't you?" The defense having thus

opened up the inquiry, the State was within its rights in pursuing it to the extent of asking the question objected to. What we have just said is true of the complaint of the question to Lint Merritt as set forth in bill of exceptions No. 4.

That a witness trying to describe the effect upon deceased of the fatal shot said, "Well, he just crumpled down just like a dead animal would that was shot through the head," would not seem to us any such answer as could have a hurtful effect in view of the fact that deceased was so shot and did fall practically dead immediately. There was no issue made of these facts.

The sheriff was about a block away from the scene of the shooting and ran immediately to the place, reaching it within less than five minutes after the shooting. He met a deputy sheriff escorting appellant who had a pistol in each hand, both of which he handed to the sheriff with the statement, "Put two marks on that big gun." Appellant had just shot two men. The statement made by him was res gestæ and admissible.

We see no theory on which the testimony offered and rejected as shown by bills of exception Nos. 10 and 11, could be admissible. That a court of inquiry was held upon complaint of a son of appellant to officers that Maud Rippey was selling his father whiskey, and what was said and done at the sitting of said court, seems of no materiality to any issue here.

There are not such facts stated in bill of exceptions No. 13 as would manifest and injury in the exclusion of testimony that after a former difficulty with the Rippeys, et al., appellant and his family kept lights burning in their home. If such testimony had been admitted it could only have shed light on the mental condition of appellant at the time of the homicide and aid in reducing the verdict to manslaughter. The verdict being for that grade of homicide, evidence tending only to show a disturbed mind being rejected, would not be held erroneous.

The objections set out in bills of exception Nos. 14 and 16 do not appear to be supported by any facts made to appear in said bills. It is a well settled proposition that each bill of exceptions must stand or fall by its own allegations, and that unless the matters stated as objections to some action of the court, be shown true in bill itself, such bill will manifest no error.

Appellant was a witness in his own behalf and testified to many material facts. For the dual purpose of affecting his credibility and of testing his knowledge and recollection, it was competent to prove by him that he had been indicted for perjury, and that he had made over his objection an application for a continuance in said perjury case for witnesses by whom he expected to prove that his memory was permanently affected and was bad.

We do not set out the testimony of appellant in extenso but state that the defensive theories raised by his testimony are two, viz: self-defense and that his crime, if any, was no graver than manslaughter. He said that he was at the place of the homicide as a witness in the cases against deceased and Maud Rippey growing out of what is called the "garden shooting", in which he was shot by Maud and Dick Rippey who fired from a car driven by Sweazea, deceased herein. Appellant did not testify to the actual or supposed presence of Dick Rippey at the scene of this homicide, and, as far as we can gather from the record, he does not base his right to act either in self-defense, or in the desired reduction of the offense to the grade of manslaughter, nor does he suggest any theory, upon which would seem to be predicated any right on his part to prove an extended list of difficulties, with or shootings etc., by Dick Rippey prior to the said garden shooting, even if, as may later appear, his testimony would make admissible the facts of said garden shooting. For some reason not apparent to us appellant was permitted to go back of said garden shooting and over a considerable period of time and detail various difficulties had between him and Dick Rippey, who was not a party to the instant shooting, nor shown to be present at the time. Appellant's contention, as evidenced by his testimony, appears to be that in these various encounters Dick Rippey was the aggressor and he, appellant, the victim.

At the close of the evidence for the defense the State introduced Dick Rippey in rebuttal and he was permitted to cover the same ground and territory showing various encounters between himself and appellant, and the acts and conduct of appellant prior to said garden shooting, said testimony all showing and tending to show that appellant was the aggressor in the encounters with Dick Rippey. Neither in the testimony of appellant nor that of Dick Rippey is it made to appear that Maud Rippey or Sweazea, both of whom were killed by appellant in the instant transaction, were present or participants in any of the difficulties or occurrences between appellant and Dick Rippey save said garden shooting.

Both the State and the appellant having been permitted to go at length into prior difficulties between Dick Rippey and appellant, -as above mentioned, the State was then permitted to prove by many witnesses separate and disconnected transactions and incidents in which appellant had assaulted and abused other persons and had been guilty of such course of conduct toward them as to indicate that he was generally a bad dangerous man, the avowed purpose of the State in such introduction being to show the disposition of appellant and as corroborating Dick Rippey in his claim that appellant was the aggressor in each of the difficulties and encounters between appellant and said Dick Rippey. The action of the court in permitting Dick Rippey to testify to these separate encounters

and transactions which did not involve deceased, and in permitting the State to introduce witnesses as to the transactions had with parties wholly disconnected either with Dick Rippey, Maud Rippey or deceased were made the subject of numerous bills of exception. Bills Nos. 23, 23a, 24, 25, 29 and 36 were taken to the cross-examination of appellant relative to said prior transactions with Dick Rippey, and to transactions occurring between appellant and other parties so disconnected. Bills Nos. 34, 37, 38, 39, 40, 41, 42, 42a, 53, 53a, 53b, 53c 54 and 58 present appellant's objections to the testimony of various witnesses as to acts, occurrences and conduct on the part of appellant involving transactions between him and other parties but which were claimed by the State to have been known to Dick Rippey and to have influenced Dick Rippey in the various encounters had between him and appellant. This character of testimony seems to us to have shed no legitimate light on any issue in this case. We are at a loss to see how the fact that appellant had been shot at or fought by Dick Rippey, could have affected his right of self-defense on the instant occasion when Dick Rippey was not present and there was no act, conversation or anything referring to Dick Rippey or in anywise making any of said prior transactions an element in this homicide. We think the learned trial judge erred in permitting the appellant to go at length into transactions with Dick Rippey prior to the garden shooting, and then in permitting the State under guise of rebuttal and of supporting Dick Rippey's attitude in said inadmissible transactions, to go at length into the same transactions and to prove appellant's generally dangerous and bad character in the particular cases as corroborating Dick Rippey.

In the event of another trial it is our belief that under the facts in this record neither the State nor the defendant show themselves entitled to go back of the garden shooting in an investigation of acts or transactions of the various parties.

Appellant's testimony was in effect that as he entered the court house he saw three men on the steps at the southeast entrance, one of whom he took to be a Mr. Marrs, another he perceived to be Maud Rippey, and the third, a man unknown to him. This excludes any belief on the part of appellant of the presence or participation of Dick Rippey. Appellant said that as he came around the corner Maud Rippey seemed to him to be trying to draw a pistol and believing that Maud was going to do so, he, appellant, drew his pistol and shot Rippey. He said that the man he had taken to be Mr. Marrs, but who turned out to be Sweazea, was thought by him to also be in the act of drawing a pistol, and that after shooting Rippey, he turned and shot deceased. Whether this was self-defense or presented such issues as to require the jury to reduce it to manslaughter, would be issues to be decided by the testimony

presented and the law given by the court.   Mr. Martin for the State testified that appellant came around the corner and the first he knew appellant was standing before him with his pistol presented and immediately fired, shooting Maud Rippey, and that he then turned and shot deceased.   The testimony of Mr. Martin is set out in a former part of this opinion.

Believing that the learned trial judge committed error in the admission of testimony pertaining to all those matters of prior difficulties and occurrences between Dick Rippey and appellant, and in admitting testimony of the transactions occurring between appellant and other parties wholly disconnected with this homicide. and that the admission of such testimony was hurtful to appellant's case, the judgment will be reversed and the cause remanded.

                                                     *Reversed and remanded.*